UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CASE NO. <u>98-721-CR-LENARD(s)(s)</u> |
| | ) 18 USC § 371 |
| v. | ) 18 USC § 794 |
| | ) 18 USC § 951 |
| GERARDO HERNANDEZ, | ) 18 USC § 1028 |
| a/k/a Manuel Viramontez, | ) 18 USC § 1117 |
| a/k/a "Giro," | ) 18 USC § 1542 |
| a/k/a "Giraldo," | ) 18 USC § 1546 |
| JOHN DOE No. 2, | ) 28 C.F.R. §§ 73.01 *et seq.* |
| a/k/a Luis Medina III, | ) |
| a/k/a "Allan," | ) |
| a/k/a "Johnny," | ) |
| a/k/a "Oso," | ) |
| RENE GONZALEZ, | ) |
| a/k/a "Castor," | ) |
| a/k/a "Iselin," | ) |
| ANTONIO GUERRERO, | ) |
| a/k/a "Lorient," | ) |
| JOHN DOE No. 3, | ) SECOND SUPERSEDING |
| a/k/a Ruben Campa, | ) INDICTMENT |
| a/k/a "Vicky," | ) |
| a/k/a "Camilo," | ) |
| a/k/a "Oscar," | ) |
| JOHN DOE No. 4, | ) |
| a/k/a Albert Manuel Ruiz, | ) |
| a/k/a "Alberto," | ) |
| a/k/a "Manny," | ) |
| a/k/a "Miguel," | ) |
| a/k/a "Nelson," | ) |
| a/k/a "A-4," | ) |
| JUAN PABLO ROQUE, | ) |
| a/k/a "German," | ) |
| JOHN DOE No. 5, | ) |
| a/k/a Ricardo Villareal, | ) |
| a/k/a "Horacio," | ) |
| a/k/a "Roco," | ) |

| | |
|---|---|
| JOHN DOE No. 6, | ) |
|     a/k/a Remijio Luna, | ) |
|     a/k/a "Remi," | ) |
|     a/k/a "Marcelino," | ) |
| ALEJANDRO ALONSO, | ) |
|     a/k/a "Franklyn," | ) |
|     a/k/a "0-5," | ) |
| NILO HERNANDEZ, | ) |
|     a/k/a "Manolo," | ) |
| LINDA HERNANDEZ, | ) |
|     a/k/a "Judith," | ) |
| JOSEPH SANTOS, | ) |
|     a/k/a "Mario," and | ) |
| AMARYLIS SILVERIO SANTOS, | ) |
|     a/k/a "Julia," | ) |
| | ) |
|         Defendants. | ) |

The Grand Jury charges that:

## COUNT 1

A.    Beginning on an unknown date, but at least as early as in or about 1994, and continuing until

on or about September 12, 1998, at Miami-Dade County, in the Southern District of Florida, and

elsewhere, the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"
**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"
**RENE GONZALEZ,**
a/k/a "Castor," a/k/a "Iselin,"
**ANTONIO GUERRERO,**
a/k/a "Lorient,"
**JOHN DOE No. 3,**
a/k/a Ruben Campa, a/k/a "Vicky,"a/k/a "Camilo," a/k/a "Oscar,"

**JOHN DOE No. 4,**
a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny,"
a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"
**JUAN PABLO ROQUE,**
a/k/a "German,"
**JOHN DOE No. 5,**
a/k/a Ricardo Villareal, a/k/a "Horacio," a/k/a "Roco,"
**JOHN DOE No. 6,**
a/k/a Remijio Luna, a/k/a "Remi," a/k/a "Marcelino,"
**ALEJANDRO ALONSO,**
a/k/a "Franklyn," a/k/a "0-5,"
**JOSEPH SANTOS,**
a/k/a "Mario," and
**AMARYLIS SILVERIO SANTOS,**
a/k/a "Julia,"

did knowingly, wilfully and unlawfully combine, conspire, confederate and agree, with each other and with other persons known and unknown to the Grand Jury,

(1) to commit offenses against the United States, that is, knowingly and intentionally to act as agents of a foreign government, that is, the Republic of Cuba, without prior notification to the Attorney General as required by law, in violation of Title 18, United States Code, Section 951, and 28 C.F.R. Sections 73.01 *et seq;* and

(2) to defraud the United States of and concerning its governmental functions and rights.

<u>Object of the Conspiracy</u>

B.      The object of the conspiracy was for co-conspirators to function as covert spies serving the interests of the government of the Republic of Cuba within the United States by gathering and transmitting information to the Cuban government concerning United States military installations,

government functions and private political activity;  by infiltrating, informing on and manipulating anti-Castro Cuban political groups in Miami-Dade County;  by sowing disinformation within these political groups and in dealings with United States private and public institutions;  and by carrying out other operational directives of the Cuban government.

### Manner and Means of the Conspiracy

C.    It was part of the manner and means of the conspiracy that trained officers of the Cuban Directorate of Intelligence (hereafter "DI"), known as "illegal officers," would take up residence in South Florida and carry out clandestine activities on behalf of the Cuban government, using the identities of United States citizens who died in childhood.  **Gerardo Hernandez, a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo"**(hereafter "Giro"); **John Doe No. 2, a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso"** (hereafter "Allan"); **John Doe No. 3, a/k/a Ruben Campa, a/k/a "Vicky," a/k/a "Camilo," a/k/a "Oscar"** (hereafter "Vicky"); **John Doe No. 4, a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny," a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"** (hereafter "A-4"); **John Doe No. 5, a/k/a Ricardo Villareal, a/k/a "Horacio," a/k/a "Roco,"** (hereafter "Horacio"); **John Doe No. 6, a/k/a Remijio Luna, a/k/a "Remi," a/k/a "Marcelino,"** (hereafter "Remi") served as illegal officers in South Florida.

D.    It was further part of the conspiracy that the illegal officers would manage and oversee the activities of agents, transmitting to the agents instructions received by the illegal officers from the Republic of Cuba.  The illegal officers also would receive oral and recorded reports from the agents, and cause these reports to be communicated to the Republic of Cuba.  **Rene Gonzalez, a/k/a "Castor," a/k/a "Iselin;"  Antonio Guerrero, a/k/a "Lorient;"  Juan Pablo Roque, a/k/a**

"German;"  Alejandro Alonso, a/k/a "Franklyn," a/k/a "0-5;"  Nilo Hernandez, a/k/a "Manolo;"  Linda Hernandez, a/k/a "Judith;"  Joseph Santos, a/k/a "Mario;" and Amarylis Silverio Santos, a/k/a "Julia," served as agents in South Florida.

E.     It was further part of the conspiracy that the network of Miami-based illegal officers and agents was known as *"LA RED AVISPA"* ("THE WASP NETWORK"). The activities of the network were overseen, directed, analyzed and reviewed by the DI in Cuba.

F.     It was further part of the conspiracy that the illegal officers would and did receive and transmit to the agents instructions, which the agents would and did carry out, to conduct covert and clandestine activities on behalf of the Republic of Cuba. These included instructions to penetrate, observe and report on the activities of Cuban exile political groups in the South Florida area;  to penetrate and report on United States military installations;  to intervene with and seek to influence United States public and private institutions, including law enforcement and political entities; to provoke and encourage dissension among Cuban political exile figures;  and to scout for and assess individuals as potential assets to the service of the government of the Republic of Cuba.

G.     It was further part of the conspiracy that its activities would and did seek to interfere with and obstruct the lawful governmental functions of agencies of the United States, including in the following ways:

1.     Seeking to have the Department of State issue a passport in the assumed identity of a deceased United States citizen;

2.     Using co-conspirators in the guise of informants to spy on and seek to manipulate the Federal Bureau of Investigation;

3.      Entering the United States, and responding to officials of the Immigration and Naturalization Service, in the assumed identity of a deceased United States citizen, by presenting fraudulent documents;

4.      Planning to obtain and obtaining employment with the Department of Defense in order to spy on military installations; and

5.      Requesting the assistance of members of the United States Congress to facilitate the entry into the United States of a would-be Cuban spy.

H.      It was further part of the conspiracy that its activities would be and were conducted with an extreme concern for secrecy and non-detection, including by the use of code-names, false identities, extensive counter-surveillance measures, concealed communication techniques, encryption of the content of communications, and compartmentalization of agents and functions.  The names used by co-conspirators included the following:

| Defendant: | Also known as: | Hereafter referred to as: |
|---|---|---|
| GERARDO HERNANDEZ | Manuel Viramontez<br>Giro<br>Giraldo | Giro |
| JOHN DOE No. 2 | Luis Medina III<br>Allan<br>Johnny<br>Oso | Allan |
| RENE GONZALEZ | Castor<br>Iselin | Castor |
| ANTONIO GUERRERO | Lorient | Lorient |

| Defendant: | Also known as: | Hereafter referred to as: |
| --- | --- | --- |
| JOHN DOE No. 3 | Ruben Campa<br>Vicky<br>Camilo<br>Oscar | Vicky |
| JOHN DOE No. 4 | Albert Manuel Ruiz<br>Alberto<br>Manny<br>Miguel<br>Nelson<br>A-4 | A-4 |
| JUAN PABLO ROQUE | German | German |
| JOHN DOE No. 5 | Ricardo Villareal<br>Horacio<br>Roco | Horacio |
| JOHN DOE No. 6 | Remijio Luna<br>Remi<br>Marcelino | Remi |
| ALEJANDRO ALONSO | Franklyn<br>0-5 | Franklyn |
| NILO HERNANDEZ | Manolo | Manolo |
| LINDA HERNANDEZ | Judith | Judith |
| JOSEPH SANTOS | Mario | Mario |
| AMARYLIS SILVERIO SANTOS | Julia | Julia |

## Overt Acts

I.     To carry out and effectuate the goals of the conspiracy, one or more of the co-conspirators committed, in the Southern District of Florida, and elsewhere, one or more of the following overt acts:

1.     On or about December 4, 1995, the DI agreed that German continue involvement

with, and urgently inform on, Jose Basulto (the leader of Brothers to the Rescue, a Miami-based Cuban exile group (hereafter "BTTR")).

2.      On or about January 5, 1996, A-4 gave **Castor** the DI's instructions for **Castor's** decisive role in the plan associated with the exit of Comrade **German** from the United States.

3.      On or about February 13, 1996, A-4 and **Giro** directed **Castor** to provide clear, detailed and precise information as to anticipated BTTR flights and directed **Castor** not to join any flights, and directed that if he could not avoid flying with BTTR he should say specified phrases into the radio.

4.      On or about February 22, 1996, **Castor** reported to **Giro** that **Castor** felt Basulto was preparing something expressly for the meeting of Concilio Cubano (which was scheduled for that weekend).

5.      On or about February 22, 1996, the DI communicated to **Giro** and A-4 that a DI officer had traveled to support the travel of **German** from the United States to Cuba via Mexico.

6.      On or about February 23, 1996, **German** left Miami as directed to return to Cuba.

7.      In or about April, 1996, **Lorient** traveled to Cuba for DI instruction on observation, collection and reporting of United States military information sought by the Cuban government.

8.      On or about May 30, 1996, **Lorient**, following contact with the DI in Cuba, submitted to **Giro** a proposal for a beeper-code system of sending information, including in an emergency indicating a United States military threat being planned against Cuba.

9.      Sometime prior to July, 1996, **Giro** communicated to **Franklyn** instructions to penetrate Movimiento Democracia, a Miami-based Cuban exile political group.

-8-

10.    Sometime prior to July, 1996, **Franklyn** penetrated Movimiento Democracia, becoming a participant in the organization's protest flotillas to waters just outside Cuba.

11.    In or about summer, 1996, **Franklyn** provided **Giro** a report on the plans and activities of Movimiento Democracia in a July, 1996, flotilla.

12.    Sometime after on or about July 3, 1996, **Castor** provided **Giro** a report incorporating the text of a letter **Castor** had caused a United States Congressional Representative to write seeking the humanitarian admission of the wife of **Castor** into the United States from Cuba.

13.    In or about summer, 1996, **Giro, Horacio** and **Remi** consulted about an apparent problem with the computer of **Horacio.**

14.    On or about September 21, 1996, **Lorient** gave **Giro** a report of **Lorient's** observations at the Naval Air Station in Boca Chica, Key West, including the times and descriptions of airplanes arriving at and departing the station, and personal information and addresses of station military officers.

15.    In or about autumn, 1996, **Castor** met with the FBI in the guise of a cooperating individual.

16.    On or about November 14, 1996, **Lorient** reported observations of aircraft and of flight, training and construction activity at the Boca Chica Naval Air Station at Key West.

17.    On or about February 25, 1997, **Lorient** and **Giro** met in Key West and exchanged bags.

18.    Sometime after on or about February 25, 1997, **Castor** provided **Giro** a report on aviation activity of Movimiento Democracia and BTTR, including flights, tail numbers, and pilots.

19.     In or about early 1997, **Mario** and **Julia** provided **Allan** a detailed report on Southern Command ("Southcom"), a unified command consisting of United States military units supporting United States interests in the Southern Theater, which command was then relocating to Miami-Dade County.

20.     On or about March 27, 1997, **Castor** reported to **Giro** that he had been flying close to Homestead Air Base with the aim of observing any strange movement, as **Giro** had directed.

21.     In or about May, 1997, **Allan** communicated that a main objective was for **Mario** or **Julia** to obtain a job at Southcom.

22.     In or about summer, 1997, **Giro** communicated to **Manolo** and **Judith** instructions to conduct surveillance activity.

23.     In or about October, 1997, **Allan** communicated with **Mario** and **Julia** concerning their studying and penetrating Southcom.

24.     In or about late 1997 or 1998, **Giro** transmitted to **Castor** plans for active measures "Flotin" and "Confusion."

25.      In or about 1997 - 98, the DI provided to **Vicky** a communication plan including beeper codes, message call signals, meeting places, visual signals, and verbal signs and countersigns.

26.     On or about January 24, 1998, **Giro** re-entered the United States at Memphis, Tennessee, holding himself out to the United States as Manuel Viramontez.

27.     On or about April 14, 1998, **Allan** and an official of the Cuban Mission to the United Nations met clandestinely in the men's room of a Wendy's restaurant in Nassau County, New York, and exchanged items.

28.     On or about June 18, 1998, the DI communicated to **Giro** concerning continuity of his work with the Avispa network.

29.     In or about July, 1998, **Vicky** reported that he had met with several agents in the operative base.

30.     In or about summer, 1998, **Allan** obtained and possessed dozens of death certificates of persons born in the United States and deceased at an early age.

31.     In or about September, 1998,  **Giro, Allan,** and **Vicky** participated in plans for the return of **Allan** to Cuba  following the theft of **Allan's** computer and encoded diskettes.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

A.     Beginning on an unknown date, but at least as early as in or about 1994, and continuing until on or about September 12, 1998, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"
**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"  and
**ANTONIO GUERRERO,**
a/k/a "Lorient,"

did knowingly, wilfully and unlawfully combine, conspire, confederate and agree, with each other and with other persons known and unknown to the Grand Jury, to communicate, deliver and transmit, directly and indirectly, to a foreign government, that is, the Republic of Cuba, information relating to the national defense of the United States, and to attempt to do so, intending and having reason to

believe that the same would be used to the injury of the United States and to the advantage of a foreign nation, that is, the Republic of Cuba, in violation of Title 18, United States Code, Section 794(a).

## Object of the Conspiracy

B.      It was the object of the conspiracy to penetrate and spy on United States military installations in the Southern District of Florida and to obtain and report to the Republic of Cuba information, including non-public information, relating to the national defense of the United States.

## Manner and Means of the Conspiracy

C.      Paragraphs A - H of Count 1 are restated and incorporated by reference herein.

## Overt Acts

D.      To carry out and effectuate the goals of the conspiracy, one or more of the co-conspirators committed, in the Southern District of Florida, and elsewhere, one or more of the following overt acts:

1.      In or about April, 1996, **Lorient** traveled to Cuba for DI instruction on observation, collection and reporting of United States military information sought by the Cuban government.

2.      On or about May 30, 1996, **Lorient**, following contact with the DI in Cuba, submitted to **Giro** a proposal for a beeper-code system of sending information, including in an emergency indicating a United States military threat being planned against Cuba.

3.      Between 1996 and 1998, **Allan** directed **Joseph Santos, a/k/a "Mario,"** and **Amarylis Silverio Santos, a/k/a "Julia,"** to observe and report information, including protected information, concerning Southern Command ("Southcom"), a unified command consisting of United

-12-

States military units supporting United States interests in the Southern Theater, which command was then relocating to Miami-Dade County.

4.     On or about September 21, 1996, **Lorient** gave **Giro** a report of **Lorient's** observations at the Naval Air Station in Boca Chica, Key West, including the times and descriptions of airplanes arriving at and departing the station, and personal information and addresses of station military officers.

5.     On or about November 14, 1996, **Lorient** reported observations of aircraft and of flight, training and construction activity at the Boca Chica Naval Air Station at Key West.

6.     On or about February 24, 1997, **Lorient** reported to **Giro** that **Lorient** was trying to learn about "top secret" activity at the Boca Chica Naval Air Station at Key West.

7.     On or about February 25, 1997, **Lorient** and **Giro** met in Key West and exchanged bags.

8.     In or about early 1997, **Mario** and **Julia** provided **Allan** a detailed report on Southcom.

9.     In or about May, 1997, **Allan** communicated that a main objective was for **Mario** or **Julia** to obtain a job at Southcom.

10.     In or about October, 1997, **Allan** communicated with **Mario** and **Julia** concerning their studying and penetrating Southcom.

All in violation of Title 18, United States Code, Sections 794(c) and 2.

### COUNT 3

A.     Beginning in or about January, 1996, and continuing until on or about September 12, 1998,

-13-

at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"

did knowingly, wilfully and unlawfully combine, conspire, confederate and agree, with persons known

and unknown to the Grand Jury, to perpetrate murder, that is, the unlawful killing of human beings

with malice aforethought, in the special maritime and territorial jurisdiction of the United States, in

violation of Title 18, United States Code, Section 1111.

### Object of the Conspiracy

B.      It was the object of the conspiracy to support and help implement, including with Miami-

based information, a plan for violent confrontation of aircraft of Brothers to the Rescue (a Miami-

based Cuban exile group, hereafter "BTTR"), with decisive and fatal results.

### Manner and Means of the Conspiracy

C.      Paragraphs A - H of Count 1 are restated and incorporated by reference herein.

### Overt Acts

D.      To carry out and effectuate the goals of the conspiracy, one or more of the co-conspirators

committed, in the Southern District of Florida, and elsewhere, one or more of the following overt

acts:

1.      On or about January 29, 1996, the DI reported approval by Superior Headquarters

of Operacion Escorpion in order to confront BTTR, and conveyed instructions for Miami agents.

2.      On or about February 5, 1996, the DI instructed **Giro** and **A-4** that it was necessary

for agents to make Operacion Escorpion a priority and inform urgently on flight data.

3.      On or about February 13, 1996, **A-4** and **Giro** directed **Castor** to provide clear,

detailed and precise information as to anticipated BTTR flights and directed **Castor** not to join any flights, and directed that if he could not avoid flying with BTTR he should say specified phrases into the radio.

4.      On or about February 17, 1996, the DI reported to **Giro** and **A-4** that MX (the head of the Cuban Directorate of Intelligence) directed that under no circumstances should **German** or **Castor** fly with BTTR or any other organization on February 24, 25, 26 and 27.

5.      On or about February 22, 1996, the DI communicated to **Giro** and **A-4** that a DI officer had traveled to support the travel of **German** from the United States to Cuba via Mexico.

6.      On or about February 22, 1996, **Giro** received **Castor's** report that **Castor** felt Jose Basulto was preparing something expressly for the meeting of Concilio Cubano (which was scheduled for that weekend).

7.      On or about February 23, 1996, **German** left Miami as directed to return to Cuba.

8.      On February 24, 1996, instrumentalities of the Cuban government shot down United States aircraft N2456S, killing Carlos Costa and Pablo Morales, in the special maritime and territorial jurisdiction of the United States.

9.      On February 24, 1996, instrumentalities of the Cuban government shot down United States aircraft N5485S, killing Armando Alejandre and Mario de la Pena, in the special maritime and territorial jurisdiction of the United States.

10.     On or about February 28, 1996, and March 1, 1996, the DI stated profound recognition of **Giro** and **A-4** for Operacion German; noted that the Commander-in-Chief had visited twice to analyze steps to follow-up on the operation; and declared that they had dealt a hard blow to

the Miami right, in which their role had been decisive.

11.  In or about April, 1996, the DI communicated to **Giro** an April 1, 1996, order in which the Chief of the Directorate of Intelligence granted recognition for outstanding results achieved on the job, during the provocations that took place on behalf of the Government of the United States this past 24th of February of 1996, and directed that it be notated in the comrade's service card.

12.  On or about June 6, 1996, **Giro** was promoted to captain.

All in violation of Title 18, United States Code, Sections 1117 and 2.

## COUNT 4

A.  Between an unknown date after May 7, 1994, and on or about August 25, 1998, in the Southern District of Florida, and elsewhere, the defendant,

### GERARDO HERNANDEZ,
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"

did knowingly possess, accept, obtain and receive a document prescribed by statute and regulation for entry into the United States, that is, purported United States passport 042259745, bearing the photographic likeness of the defendant **GERARDO HERNANDEZ,** a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo," in the name of another person, which document the defendant knew to be forged, counterfeited, altered, and falsely made, and to have been procured by means of false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, all in violation of Title 18, United States Code, Sections 1546(a) and 2.

## COUNT 5

A.      Beginning on an unknown date until on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"

did knowingly possess in and affecting interstate and foreign commerce, with intent to use unlawfully, five or more identification documents other than those issued lawfully for the use of the defendant, and false identification documents, to wit:  Puerto Rico voter identification card in the name of Manuel Viramontez Hernandez;  Mexican Driver's License number 148147 in the name of Manuel Viramontez Hdez;  Puerto Rico I.D. card number 6959 in the name of Manuel Viramontez Hernandez;  Texas birth certificate for Manuel Viramontez, issued May 11, 1994; United States Passport number 042259745 in the name of a person other than Manuel Viramontez;  Puerto Rico Driver's License number 1343302 in the name of a person other than Manuel Viramontez;  Social Security card in the name of a person other than Manuel Viramontez bearing number 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;  Puerto Rico birth certificate for a person other than Manuel Viramontez; all in violation of Title 18, United States Code, Sections 1028(a)(3), (b)(2)(B)  and (c)(3), and Section 2.

## COUNT 6

A.      Between an unknown date after May 7, 1994, and on or about July 22, 1996, in the Southern District of Florida, and elsewhere, the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo," and
**JOHN DOE No. 4,**
a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny,"
a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"

-17-

did knowingly possess, accept, obtain and receive a document prescribed by statute and regulation for entry into the United States, that is, purported United States passport Z5823064, bearing the photographic likeness of the defendant **JOHN DOE No. 4**, a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny," a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4," in the name of another person, which document the defendants knew to be forged, counterfeited, altered, and falsely made, and to have been procured by means of false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, all in violation of Title 18, United States Code, Sections 1546(a) and 2.

### COUNT 7

A.    Between an unknown date after May 7, 1994, and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

### JOHN DOE No. 3,
a/k/a Ruben Campa, a/k/a "Vicky," a/k/a "Camilo," a/k/a "Oscar,"

did knowingly possess, accept, obtain and receive a document prescribed by statute and regulation for entry into the United States, that is, purported United States passport number 043291559, bearing the photographic likeness of the defendant **JOHN DOE No. 3**, a/k/a Ruben Campa, a/k/a "Vicky," a/k/a "Camilo," a/k/a "Oscar," in the name of another person, which document the defendant knew to be forged, counterfeited, altered, and falsely made, and to have been procured by means of false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, all in violation of Title 18, United States Code, Sections 1546(a) and 2.

### COUNT 8

A.    Beginning on an unknown date until on or about September 12, 1998, in the Southern District

of Florida, and elsewhere, the defendant,

**JOHN DOE No. 3,**
a/k/a Ruben Campa, a/k/a "Vicky," a/k/a "Camilo," a/k/a "Oscar,"

did knowingly possess in and affecting interstate and foreign commerce, with intent to use unlawfully,

five or more identification documents other than those issued lawfully for the use of the defendant,

and false identification documents, to wit:  Florida Driver's License number R500-640-60-248-0 in

the name of a person other than Ruben Campa;  Social Security card in the name of a person other

than Ruben Campa bearing number 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;  United States passport number 043291559 in the

name of a person other than Ruben Campa;  Florida Driver's License number C510-720-65-334-0

in the name of Ruben Campa;  Social Security card in the name of Ruben Campa bearing number 240-

77-4930;  Texas birth certificate for Ruben Campa, issued October 11, 1993;  Texas Department of

Health Certification of Birth card for Ruben Campa, issued September 20, 1985;  Mexican Driver's

License number 3009171 in the name of Ruben Campa;  all  in violation of Title 18, United States

Code, Section 1028(a)(3), (b)(2)(B)  and (c)(3), and Section 2.

## COUNT 9

A.      Between an unknown date after May 7, 1994, and on or about September 12, 1998, in the

Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"

did knowingly possess, accept, obtain and receive a document prescribed by statute and regulation

for entry into the United States, that is, purported United States passport number 04370531 1, bearing

the photographic likeness of the defendant **JOHN DOE No. 2,** a/k/a Luis Medina III,  a/k/a "Allan,"

-19-

a/k/a "Johnny," a/k/a "Oso," in the name of another person, which document the defendant knew to be forged, counterfeited, altered, and falsely made, and to have been procured by means of false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, all in violation of Title 18, United States Code, Sections 1546(a) and 2.

## COUNT 10

A.  Between on or about January 26, 1996, and on or about February 6, 1996, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"

wilfully and knowingly made a false statement in an application for a passport with intent to induce and secure for his own use the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, in that in such application the defendant stated that his name was Luis Medina III; that his father's name was Luis Ybarra Medina; and that his mother's maiden name was Raquel Guerrero, each of which statements he knew to be false, all in violation of Title 18, United States Code, Sections 1542 and 2.

## COUNT 11

A.      Between on or about February 6, 1996, and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"

did knowingly possess, accept, obtain and receive a document prescribed by statute and regulation

-20-

for entry into the United States, that is, United States passport number 044551646, in the name of

Luis Medina III, which document the defendant knew to have been procured by means of false claim

and statement and otherwise procured by fraud and unlawfully obtained, all in violation of Title 18,

United States Code, Sections 1546(a) and 2.

## COUNT 12

A.      Beginning on an unknown date until on or about September 12, 1998, in the Southern District

of Florida, and elsewhere, the defendant,

### JOHN DOE No. 2,
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"

did knowingly possess in and affecting interstate and foreign commerce, with intent to use unlawfully,

five or more identification documents other than those issued lawfully for the use of the defendant,

and false identification documents, to wit:  Puerto Rico voter identification card  in the name of Luis

Medina;  Florida Driver's License number M350-520-68-249-0 in the name of Luis Medina issued

November 20, 1992;  Social Security card in the name of Luis Medina III bearing number 594-25-

0578; Texas birth certificate for Luis Medina III, issued September 10, 1992;  Texas birth certificate

for Luis Medina III, issued January 24, 1996;  United States Passport number 044551646 in the name

of Luis Medina III;  Puerto Rico Driver's License number 165428 in the name of a person other than

Luis Medina ;  Florida Driver's License number M635-200-62-297-0 in the name of a person other

than Luis Medina;  Social Security card in the name of a person other than Luis Medina bearing

number 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;  Puerto Rico voter identification card in the name of a person other than Luis

Medina;  City of New York birth certificate for a person other than Luis Medina;  United States

passport number 043705311 in the name of a person other than Luis Medina;  all in violation of Title

18, United States Code, Sections 1028(a)(3), (b)(2)(B) and (c)(3), and Section 2.

## COUNT 13

A.    At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.    Between in or about 1995, and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 14

A.    At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.    Between in or about 1995, and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 15

A.   At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.   Between in or about 1995, and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**RENE GONZALEZ,**
a/k/a "Castor," a/k/a "Iselin,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General; and the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo," and
**JOHN DOE No. 4,**
a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny,"
a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"

knowingly did cause and aid and abet defendant **RENE GONZALEZ,** a/k/a "Castor," a/k/a "Iselin," to act as an agent of a foreign government, that is, the Republic of Cuba, knowing that defendant **RENE GONZALEZ,** a/k/a "Castor," a/k/a "Iselin," had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

-23-

## COUNT 16

A.     At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.     Between in or about 1995, and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**ANTONIO GUERRERO,**
a/k/a "Lorient,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General; and the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"
**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso," and
**JOHN DOE No. 3,**
a/k/a Ruben Campa, a/k/a "Vicky," a/k/a "Camilo," a/k/a "Oscar,"

knowingly did cause and aid and abet defendant **ANTONIO GUERRERO,** a/k/a "Lorient," to act as an agent of a foreign government, that is, the Republic of Cuba, knowing that defendant **ANTONIO GUERRERO,** a/k/a "Lorient," had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 17

A.     At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term

-24-

"agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.        Between in or about 1997,  and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 3,**
a/k/a Ruben Campa, a/k/a "Vicky," a/k/a "Camilo," a/k/a "Oscar,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 18

A.        At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.        Between in or about 1994, and in or about March, 1996, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 4,**
a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny,"
a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 19

A.        At all times material to this indictment, a person acting in the United States as an agent of a

foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.      Between in or about 1995, and on or about February 23, 1996, in the Southern District of Florida, and elsewhere, the defendant,

**JUAN PABLO ROQUE,**
a/k/a "German,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General; and the defendant,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"

knowingly did cause and aid and abet defendant **JUAN PABLO ROQUE,** a/k/a "German," to act as an agent of a foreign government, that is, the Republic of Cuba, knowing that defendant **JUAN PABLO ROQUE,** a/k/a "German," had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

### COUNT 20

A.      At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.      Between in or about 1995, and in or about March, 1997, in the Southern District of Florida, and elsewhere, the defendant,

-26-

**JOHN DOE No. 5,**
a/k/a Ricardo Villareal, a/k/a "Horacio", a/k/a "Roco,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 21

A.      At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.      Between in or about 1995, and in or about April, 1997, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 6,**
a/k/a Remijio Luna, a/k/a "Remi," a/k/a "Marcelino,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that he had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 22

A.      At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.      Between in or about 1994, and on or about September 12, 1998, in the Southern District of

Florida, and elsewhere, the defendant,

**ALEJANDRO ALONSO,**
a/k/a "Franklyn," a/k/a "0-5,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that

he had not provided prior notification to the Attorney General; and the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo" a/k/a "Giraldo,"
**JOHN DOE No. 4,** and
a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny,"
a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"

knowingly did cause and aid and abet defendant **ALEJANDRO ALONSO,** a/k/a "Franklyn," a/k/a

"0-5," to act as an agent of a foreign government, that is, the Republic of Cuba, knowing that

defendant **ALEJANDRO ALONSO,** a/k/a "Franklyn," a/k/a "0-5," had not provided prior

notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and

2, and 28 C.F.R. Sections 73.01 *et seq.*

### COUNT 23

A.     At all times material to this indictment, a person acting in the United States as an agent of a

foreign government was required to provide prior notification to the Attorney General. The term

"agent of a foreign government" includes an individual who agrees to operate within the United

States subject to the direction or control of a foreign government or official.

B.     Between in or about 1994, and on or about September 12, 1998, in the Southern District of

Florida, and elsewhere, the defendant,

**NILO HERNANDEZ,**
a/k/a "Manolo,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that

he had not provided prior notification to the Attorney General; and the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo," and
**JOHN DOE No. 4,**
a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny,"
a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"

knowingly did cause and aid and abet defendant **NILO HERNANDEZ,** a/k/a "Manolo," to act as

an agent of a foreign government, that is, the Republic of Cuba, knowing that defendant **NILO**

**HERNANDEZ,** a/k/a "Manolo," had not provided prior notification to the Attorney General, all in

violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 24

A.     At all times material to this indictment, a person acting in the United States as an agent of a

foreign government was required to provide prior notification to the Attorney General. The term

"agent of a foreign government" includes an individual who agrees to operate within the United

States subject to the direction or control of a foreign government or official.

B.     Between in or about 1994, and on or about September 12, 1998, in the Southern District of

Florida, and elsewhere, the defendant,

**LINDA HERNANDEZ,**
a/k/a "Judith,"

knowingly did act as an agent of a foreign government, that is, the Republic of Cuba, knowing that

she had not provided prior notification to the Attorney General; and the defendants,

**GERARDO HERNANDEZ,**
a/k/a Manuel Viramontez, a/k/a "Giro," a/k/a "Giraldo,"  and
**JOHN DOE No. 4,**
a/k/a Albert Manuel Ruiz, a/k/a "Alberto," a/k/a "Manny,"
a/k/a "Miguel," a/k/a "Nelson," a/k/a "A-4,"

knowingly did cause and aid and abet defendant **LINDA HERNANDEZ,** a/k/a "Judith," to act as

an agent of a foreign government, that is, the Republic of Cuba, knowing that defendant **LINDA HERNANDEZ**, a/k/a "Judith," had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 25

A.     At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.     Between in or about 1995, and on or about September 12, 1998, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"

knowingly did cause and aid and abet Joseph Santos, a/k/a "Mario," to act as an agent of a foreign government, that is, the Republic of Cuba, knowing that Joseph Santos, a/k/a "Mario," had not provided prior notification to the Attorney General, all in violation of Title 18, United States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

## COUNT 26

A.     At all times material to this indictment, a person acting in the United States as an agent of a foreign government was required to provide prior notification to the Attorney General. The term "agent of a foreign government" includes an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

B.      Between in or about 1995, and on or about September 12, 1998, in the Southern District of

Florida, and elsewhere, the defendant,

**JOHN DOE No. 2,**
a/k/a Luis Medina III, a/k/a "Allan," a/k/a "Johnny," a/k/a "Oso,"

knowingly did cause and aid and abet Amarylis Silverio Santos, a/k/a "Julia," to act as an agent of

a foreign government, that is, the Republic of Cuba, knowing that Amarylis Silverio Santos, a/k/a

"Julia," had not provided prior notification to the Attorney General, all in violation of Title 18, United

States Code, Sections 951 and 2, and 28 C.F.R. Sections 73.01 *et seq.*

A TRUE BILL

_____
FOREPERSON

_____
THOMAS E. SCOTT
UNITED STATES ATTORNEY

_____
CAROLINE HECK MILLER
ASSISTANT UNITED STATES ATTORNEY

_____
GUY A. LEWIS
ASSISTANT UNITED STATES ATTORNEY

-31-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO. __98-721-Cr-JAL(s)(s)__

v.

## CERTIFICATE OF TRIAL ATTORNEY*

GERARDO HERNANDEZ, et al

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| New Defendant(s) | Yes _x_ | No ___ |
| Number of New Defendants | _4_ | |
| Total number of counts | _26_ | |

_X_ Miami ___ Key West
___ FTL ___ WPB ___ FTP

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:        (Yes or No) _Yes_
      List language and/or dialect : ___Spanish_

4.    This case will take _30_ days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
      (Check only one)                                 (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | ___ | Petty | ___ | |
| II | 6 to 10 days | ___ | Minor | ___ | |
| III | 11 to 20 days | ___ | Misdem. | ___ | |
| IV | 21 to 60 days | _X_ | Felony | _X_ | |
| V | 61 days and over | ___ | | | |

6.    Has this case been previously filed in this District Court? (Yes or No) _X_
If yes:
Judge: __Joan A. Lenard__        Case No. __98-721-Cr-JAL(s)__
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) _Yes_
If yes:
Magistrate Case No. __98-3493-Garber_
Related Miscellaneous numbers: 98-3539, 3542, 3543, 3544, 3545, 3546, 3547, 3555, 3834, 3839, 3840 and 3841-Dube
Defendant(s) in federal custody as of _10 defendants in custody as of September 12, 1998_
Defendant(s) in state custody as of ___
Rule 20 from the ___        District of ___

Is this a potential death penalty case? (Yes or No) _No_

7.    Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes __ No    If yes, was it pending in the Central Region? __ Yes _X_ No

CAROLINE HECK MILLER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 322369

*Penalty Sheet(s) attached

REV.4/7/99

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: GERARDO HERNANDEZ, a/k/a Manuel Case No. 98-721-CR-JAL(s)(s)
Viramontez, a/k/a "Giro" a/k/a "Giraldo"

Count #: 1

Conspiracy to commit an offense against the United States;

18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment

Count #: 2

Conspiracy to gather and transmit National Defense Information; 18 U.S.C. § 794

*Max. Penalty: Life imprisonment

Counts #: 3

Conspiracy to commit murder;

18 U.S.C. § 1117

*Max. Penalty: Life imprisonment

Count #: 4, 6

Fraud and misuse of documents;

18 U.S.C. §1546

*Max. Penalty: 10 years of imprisonment as to each count

Count #: 5

Possession with intent to use fraudulent identification documents;

18 U.S.C. § 1028

*Max. Penalty: 3 years of imprisonment

Counts #: 13, 15, 16, 19, 22, 23, and 24

Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 *et seq.*

*Max. Penalty: 10 years of imprisonment as to each count

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: JOHN DOE No. 2, a/k/a Luis Medina, III, Case No. 98-721-CR-JAL(s)(s)
a/k/a "Allan" a/k/a "Johnny," a/k/a "Oso"

Count #: 1

Conspiracy to commit an offense against the United States;

18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment

Count #: 2

Conspiracy to gather and transmit National Defense Information; 18 U.S.C. § 794

*Max. Penalty: Life imprisonment

Counts #: 9, 11

Fraud and misuse of documents;

18 U.S.C. § 1546

*Max. Penalty: 10 years of imprisonment as to each count

Count #: 10

False statement in passport application

18 U.S.C. §1542

*Max. Penalty: 10 years of imprisonment

Count #: 12

Possession with intent to use fraudulent identification documents;

18 U.S.C. § 1028

*Max. Penalty: 3 years of imprisonment

Counts #: 14, 16, 25, and 26

Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 *et seq.*

*Max. Penalty: 10 years of imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: RENE GONZALEZ, a/k/a "Castor,"     Case No. 98-721-CR-JAL(s)(s)
                  a/k/a "Iselin"

Count #: 1

Conspiracy to commit an offense against the United States;

18 U.S.C. § 371

\*Max. Penalty: 5 years of imprisonment

Count #: 15

Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 et seq.

\*Max. Penalty: 10 years of imprisonment

Counts #:

\*Max. Penalty:

Count #:

\*Max Penalty:

Count #:

\*Max. Penalty:

Counts #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: ANTONIO GUERREO, a/k/a "Lorient" Case No. 98-721-CR-JAL(s)(s)

Count #: 1

Conspiracy to commit an offense against the United States;

18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment

Count #: 2

Conspiracy to gather and transmit National Defense Information; 18 U.S.C. § 794

*Max. Penalty: Life imprisonment

Counts #: 16

Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 et seq.

*Max. Penalty: 10 years of imprisonment

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Counts #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: <u>JOHN DOE No. 3, a/k/a Ruben Campa,</u>   Case No. <u>98-721-CR-JAL(s)(s)</u>
<u>a/k/a "Vicky," a/k/a "Camilo," a/k/a "Oscar"</u>

Count #: 1

<u>Conspiracy to commit an offense against the United States;</u>

<u>18 U.S.C. § 371</u>

_____

<u>*Max. Penalty: 5 years of imprisonment</u>
Count #: 7

<u>Fraud and misuse of documents;</u>

<u>18 U.S. C. § 1546</u>

<u>*Max. Penalty: 10 years of imprisonment</u>
Counts #: 8

<u>Possession with intent to use fraudulent identification documents;</u>

<u>18 U.S.C. § 1028</u>

<u>*Max. Penalty: 3 years of imprisonment</u>
Count #: 16, and 17

<u>Acting as an agent of a foreign government without prior notification to the Attorney General;</u>

<u>18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 *et seq.*</u>

<u>*Max. Penalty: 10 years of imprisonment as to each count</u>
Count #:

_____

_____

<u>*Max. Penalty:</u>
Counts #:

_____

_____

<u>*Max. Penalty:</u>

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: JOHN DOE No. 4, a/k/a Albert Manuel Ruiz, Case No. 98-721-CR-JAL(s)(s)
a/k/a "Alberto," a/k/a "Manny," a/k/a "Miguel,"
a/k/a "Nelson," a/k/a "A-4"

Count #: 1

Conspiracy to commit an offense against the United States;

18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment

Count #: 6

Fraud and misuse of documents;

18 U.S. C. § 1546

*Max. Penalty: 10 years of imprisonment

Counts #: 15, 18, 22, 23 and 24

 Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 *et seq.*

*Max. Penalty: 10 years of imprisonment as to each count

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Counts #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## <u>PENALTY SHEET</u>

Defendant's Name: <u>JUAN PABLO ROQUE, a/k/a "German"</u> Case No. <u>98-721-CR-JAL(s)(s)</u>

Count #: 1

<u>Conspiracy to commit an offense against the United States;</u>

<u>18 U.S.C. § 371</u>

<u>*Max. Penalty: 5 years of imprisonment</u>

Count #: 19

<u>Acting as an agent of a foreign government without prior notification to the Attorney General;</u>

<u>18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 et seq.</u>

<u>*Max. Penalty: 10 years of imprisonment</u>

Counts #:

<u>*Max. Penalty:</u>

Count #:

<u>*Max. Penalty:</u>

Count #:

<u>*Max. Penalty:</u>

Counts #:

<u>*Max. Penalty:</u>

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: JOHN DOE No. 5, a/k/a Ricardo Villareal, Case No. 98-721-CR-JAL(s)(s)
a/k/a "Horacio," a/k/a "Roco"

Count #: 1

Conspiracy to commit an offense against the United States;

18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment

Count #: 20

Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 *et seq.*

*Max. Penalty: 10 years of imprisonment

Counts #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Counts #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## <u>PENALTY SHEET</u>

Defendant's Name: <u>JOHN DOE No. 6, a/k/a Remijio Luna,</u>   Case No. <u>98-721-CR-JAL(s)(s)</u>
                         a/k/a "Remi," a/k/a "Marcelino"

Count #: 1

<u>Conspiracy to commit an offense against the United States;</u>

<u>18 U.S.C. § 371</u>

<u>*Max. Penalty: 5 years of imprisonment</u>

Count #: 21

<u>Acting as an agent of a foreign government without prior notification to the Attorney General;</u>

<u>18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 *et seq.*</u>

<u>*Max. Penalty: 10 years of imprisonment</u>

Counts #:

<u>*Max. Penalty:</u>

Count #:

<u>*Max. Penalty:</u>

Count #:

<u>*Max. Penalty:</u>

Counts #:

<u>*Max. Penalty:</u>

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# <u>PENALTY SHEET</u>

Defendant's Name: <u>ALEJANDRO ALONSO, a/k/a "Franklyn,"</u> Case No. <u>98-721-CR-JAL(s)(s)</u>
        <u>a/k/a "0-5"</u>

Count #: 1

<u>Conspiracy to commit an offense against the United States;</u>

<u>18 U.S.C. § 371</u>

_____

<u>*Max. Penalty: 5 years of imprisonment</u>

Count #: 22

<u>Acting as an agent of a foreign government without prior notification to the Attorney General;</u>

<u>18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 *et seq.*</u>

<u>*Max. Penalty: 10 years of imprisonment</u>

Counts #:

_____

<u>*Max. Penalty:</u>

Count #:

_____

<u>*Max. Penalty:</u>

Count #:

_____

<u>*Max. Penalty:</u>

Counts #:

_____

<u>*Max. Penalty:</u>

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: NILO HERNANDEZ, a/k/a "Manolo"        Case No. 98-721-CR-JAL(s)(s)

Count #: 23

Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 et seq.

*Max. Penalty: 10 years of imprisonment

Count #:

*Max. Penalty:

Counts #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Counts #:

*Max. Penalty:

**Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: LINDA HERNANDEZ, a/k/a "Judith"      Case No. 98-721-CR-JAL(s)(s)

Count #:24

Acting as an agent of a foreign government without prior notification to the Attorney General;

18 U.S.C. § 951 and 2 and 28 C.F.R. §§ 73.01 et seq.

\*Max. Penalty: 10 years of imprisonment

Count #:

\*Max. Penalty:

Counts #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Counts #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### <u>PENALTY SHEET</u>

Defendant's Name: <u>JOSEPH SANTOS, a/k/a "Mario"</u>     Case No. <u>98-721-CR-JAL(s)(s)</u>

Count #: 1

<u>Conspiracy to commit an offense against the United States;</u>

<u>18 U.S.C. § 371</u>

<u>\*Max. Penalty: 5 years of imprisonment</u>
Count #:

<u>\*Max. Penalty:</u>
Counts #:

<u>\*Max. Penalty:</u>
Count #:

<u>\*Max. Penalty:</u>
Count #:

<u>\*Max. Penalty:</u>
Counts #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: AMARYLIS SILVERIO SANTOS, a/k/a "Julia"   Case No. 98-721-CR-JAL(s)(s)

Count #: 1

Conspiracy to commit an offense against the United States;

18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment

Count #:

*Max. Penalty:

Counts #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Counts #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96